This is a suit by Henry Raziano against Frank J. Clancy, sheriff of the Parish of Jefferson, for $1,011.97 claimed to be the loss sustained by plaintiff resulting from the alleged improper release by the said sheriff of certain movable property seized under the writ of attachment issued in the matter of Raziano v. Freitag, Inc., No. 15528 of the docket of the Twenty-fourth Judicial District Court for the Parish of Jefferson. Defendant called in warranty Mrs. Clemence Landry Evans, wife of Elmo Evans who, as surety, signed the release bond on which the defendant, Freitag, Inc., was principal.
There is very little dispute over the facts. On June 12, 1942, Raziano filed suit against Freitag, Inc., for $1,114.97 and caused the issuance of a writ of attachment under which the present defendant, Frank J. Clancy, as Sheriff of the Parish of Jefferson, seized the following property of the Freitag Company:
7 mules 1 Ford 1 1/2 ton truck P.B. 18-126-1168 1 T.D. 18 Int., Bulldozer 1 T.D. 18 Int. Bulldozer 1 Int. truck 1690-Y.D. 1 Int. T. 40 Bulldozer
On January 7, 1943, there was judgment in favor of Raziano and against the Freitag Company for $1,011.97. In the meantime, as a result of the bond which had been executed on June 16, 1942 and on which Mrs. Evans was surety, the sheriff had released to the Freitag Company all of the seized property.
On November 7, 1942, which it will be noted was after the release of the property which had been attached in the Raziano suit but before judgment was rendered in that suit, Martin Owsley, Inc., in the same court filed suit against Philip Freitag, Inc., for $10,816.85 and obtained a writ of attachment under which the Sheriff, Clancy, seized all of the property which had been seized and released in the Raziano suit except the seven mules.
Raziano, who is the plaintiff in this suit against Clancy and who was plaintiff in the first suit against the Freitag Company, was appointed by Clancy as keeper of the property seized by Martin Owsley, Inc.
The Martin Owsley Company in due course obtained judgment against the Freitag Company and, based on this judgment, a writ of fieri facias was issued and the property under attachment was seized under the writ. It was later sold and the proceeds, some $1,300 were paid to the seizing judgment creditor, Martin Owsley, Inc.
Therefore, when on January 7, 1943, Raziano, having obtained judgment against *Page 778 
the Freitag Company, provoked, the issuance of a writ of fieri facias, the sheriff returned the writ unsatisfied, giving as the reason: "I was unable to find any property owned by the defendant in the Parish of Jefferson except that which is under attachment in the matter of Martin Owsley, Inc. v. Philip Freitag, Inc."
Raziano, knowing that he had caused the property of the Freitag Company to be seized under the writ of attachment, called on Clancy, the sheriff, to explain why no property could be found and was advised that that seizure had been released on a bond which had been furnished in accordance with the provisions of Article 259 of the Code of Practice. It was then discovered that the bond which Clancy claimed to have obtained when he released the attachment had not been filed in court as required by that article of the Code of Practice. Later the bond was found to have been recorded in the Mortgage Office on February 15, 1943, and we are told that it was left in the Mortgage Office. The bond which has since been filed in the record of the suit of Henry Raziano v. Philip Freitag, Inc., is, as we have said, signed by Mrs. Evans, as surety and the condition of that bond reads as follows: "The condition of which is such, that if the said defendant, Philip Freitag, Inc., shall satisfy such judgment as may be rendered against him in the suit pending as above mentioned, then this obligation to be void, or else to remain in full force."
At the bottom of the bond there is an assignment and transfer bearing date June 16, 1942, under which Clancy transferred, assigned and set over to Henry Raziano all of his right, title and interest in and to the bond.
In defense of this suit Clancy offers several contentions. By a plea of nonjoinder he asserts that Mrs. Evans is a necessary party to the suit. He further maintains that he was authorized to accept the bond under the provisions of the codal article to which we have referred. He also declares that Raziano, having been appointed keeper in the Martin Owsley suit of the same property which he, himself, had caused to be attached in his own suit, must be charged with actual knowledge of the fact that the attachment which he had provoked had been released and, accordingly, that Raziano should be held to be estopped to contend that his attachment should not have been released since he made no protest when he was appointed keeper in the other suit.
In answer to the call in warranty under which Clancy seeks to hold Mrs. Evans, if he, himself, should be held liable to plaintiff, Mrs. Evans declares that Clancy has no right of action against her for the reason that he had assigned to Raziano any right which he, Clancy, may have originally had under the release bond, and for the further reason that no demand has been made upon her for the return of the property which was leased under the bond on which she was surety.
All exceptions were overruled and there was judgment for Raziano and against Clancy for $1,040.24, with 5% interest from June 12, 1942, and there was further judgment on the call in warranty in favor of Clancy and against Mrs. Evans in the sum of $1,040.24.
Both Clancy and Mrs. Evans have appealed.
[1, 2] By the plea of nonjoinder, Clancy presents the contention that Mrs. Evans, as surety on the release bond, is a necessary party to plaintiff's suit. This contention overlooks the fact that the foundation on which plaintiff's claim against him is based is the charge that Clancy did not comply with the requirements of the Code of Practice in properly returning the bond into court. There can be no doubt that under Article 259 of the Code of Practice the sheriff was within his rights in accepting a release bond, and there is also no doubt that if he had complied with the codal provisions, in all particulars, there could have been no action against him. The only action which the attaching creditor would have had would have been against the surety on the release bond. There are not two rights of action given to the seizing plaintiff. Either the bond is in all respects legal and the right of the seizing plaintiff is against the surety, or it is irregular and the right of the seizing creditor is against the sheriff.
It is clear that the bond was not returned into court as the Code requires. It is argued that since the bond was filed in the Mortgage Office it was, to all intents and purposes, filed in the clerk's office since, as clerk, he is ex-officio Recorder of Mortgages. But though the clerk fills both positions they are separate and distinct, and for each there is a separate *Page 779 
and distinct office. It cannot be said that the filing of a bond for recordation in the Mortgage Office constitutes a "return" of the bond into court as is required by the Code. It follows that since in the returning of the bond the sheriff did not comply with the law, the action of the plaintiff is against him and not against the surety on the bond, and that therefore the exception of nonjoinder was properly overruled.
[3] On the question raised by the fact that Raziano was appointed keeper of the property seized in the Martin Owsley suit, and thus in his capacity as keeper had in his possession the very property — except the mules — which had been seized under his writ of attachment in his own suit, it appears to us that on the facts shown this contention, which is based on the doctrine of equitable estoppel, should not be allowed to prevail against him. He was not appointed keeper until after the second attachment which was on November 18, 1942, whereas his own seizure had been released on June 16, 1942, more than five months before and it was already too late for him to take any steps to object to the release if he ever had any legal right to do so. At that time all that he could do was to look to the sheriff for redress. Furthermore, this contention seems to be based on a misunderstanding of the obligation assumed by the defendant and the surety when the attachment was released on bond. There was no obligation to return the property itself. This bond was not a forthcoming bond such as is given in a sequestration suit but was merely a bond which, under its own terms, made the surety liable for the payment of the judgment, if the defendant, himself, should fail to pay it when rendered.
[4] There was no obligation in the attaching creditor to follow the property itself after it had been released under the bond. Furthermore, it is not shown that he had actual knowledge of the fact that the property which was entrusted to him as keeper was the identical property which, under his own writ of attachment, had been seized. Unless he had such knowledge there was no duty in him to do anything at all to protect his rights — assuming that there was anything that he could have done. Gallagher v. Conner, 138 La. 633, 70 So. 539.
[5] For these reasons we think that Raziano, although he would have had a perfect claim against the surety had all requirements been complied with, has now, because of the failure of the sheriff to comply with those requirements, a claim against the sheriff, and may maintain that claim for such loss as he may have sustained as a result of the failure of Clancy to properly return the bond into court. Accordingly, the judgment against Clancy is correct.
Mrs. Evans contends that there is no right of action in Clancy against her for either of two reasons; first, that there was no demand made on her for the production of the property released on the bond and, second, for the reason that since Clancy assigned to Raziano all of Clancy's rights under the bond, he no longer has any right against the surety on the bond.
[6] In the first place, there was no obligation in the sheriff to call on the surety to return the property which was released from attachment. The terms of the bond do not provide that Mrs. Evans shall have the right to return the property nor is it provided in the codal article to which we have referred that the bond shall provide that the property may be returned to the custody of the sheriff. It provides that if the defendant should satisfy the judgment, the obligation is to be void but that otherwise the surety shall be liable for the amount of the judgment.
[7] The other contention of Mrs. Evans that Clancy cannot be heard to assert any claim against her because he assigned his rights to Raziano, overlooks the fact that that assignment was not effective. As we have already said, it is true that had the sheriff complied fully with the provisions of the codal article he would have completely freed himself from all possible liability to Raziano and could have forced Raziano to look to Mrs. Evans, the surety on the release bond. But he did not do so, and consequently is liable to Raziano. Surely the fact that the sheriff failed to return the bond into court cannot serve to relieve Mrs. Evans from liability. The bond remained a valid, conventional obligation which she undertook in favor of the sheriff. Since she is not to be held liable directly to Raziano because the assignment is not effective, surely *Page 780 
she cannot point to the assignment as a release of her liability to Clancy.
For these reasons the judgment appealed from is affirmed.
Affirmed.